UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

METALFORM SERVICES, LLC and,
GWS LOGISTICS,

    Plaintiffs,

vs.

J.J. & ASSOCIATES, INC.,

    Defendant.
_____/

Civil Action No. 17-CV-12407

HON. BERNARD A. FRIEDMAN

## **OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

This matter is before the Court on defendant's motion for judgment on the pleadings [docket entry 11]. Plaintiffs have responded. Defendant has not replied, and the time to do so has expired. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing.

### **FACTS**

Plaintiff Metalform transports and assembles heavy machinery. Am. Compl. ¶ 2. Plaintiff GWS Logistics provides transportation services. *Id.* ¶ 3. In October 2016, ICE Industries contracted with Metalform to disassemble a machine press in Montgomery, Alabama and transport it to and reassemble it in Grenada, Mississippi. *Id.* ¶ 16. Metalform subcontracted with GWS to transport the press. *Id.* ¶ 18. GWS further subcontracted—using transportation broker TCM Transport—with defendant J.J. & Associates to transport the 1,200-ton press crown. *Id.* ¶ 19.[1] Plaintiffs allege that the subcontract identifies Metalform as a customer. *Id.* ¶¶ 19–20.

---

[1] The Court understands the press crown to be the press's topmost piece.

In February 2017, J.J. and GWS executed a bill of lading—signed by a J.J. employee—stating that J.J. would transport the press crown to Grenada, Mississippi. *Id.* ¶¶ 64–65. The press crown was loaded undamaged onto J.J.'s truck. *Id.* ¶ 68. During transport, however, the press crown's connecting arms were damaged. *Id.* ¶ 22. Metalform determined that the press crown "lost a significant portion of surface during transportation which was critical to the integrity of the connecting arms." *Id.* ¶ 24. ICE industries made an insurance claim on the machinery for $124,736. *Id.* ¶ 25. As a result of the delay in assembly, plaintiffs sustained business expenses, damages, and costs. *Id.* ¶ 76.

Plaintiffs filed the instant action in Macomb County Circuit Court in May 2017. Defendant removed it to this Court in July. Plaintiffs amended their complaint in September.

## LEGAL STANDARD

When deciding a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), the Court applies the same standard it would to decide a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010). The Court must "construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Shane v. Bunzl Distrib. USA, Inc.*, 200 Fed. App'x 397, 401 (6th Cir. 2006).

## DISCUSSION

### I. <u>Counts I–IV: State Law Claims</u>

Plaintiffs' first four counts assert claims based on violations of Michigan common law: breach of contract, negligence, promissory estoppel, and negligent entrustment. The Carmack Amendment, 49 U.S.C. § 14706, preempts state-law claims against interstate carriers.

*See Exel, Inc. v. S. Refrigerated Transp., Inc.*, 807 F.3d 140, 148 (6th Cir. 2015) (holding that "state and common law claims against" interstate carriers are "preempted" by the Carmack Amendment). Thus, to successfully pursue a claim arising from an interstate shipping contract, a person must sue under the Carmack Amendment. In the instant case, J.J.—a carrier—transported the press crown from Alabama to Mississippi. Because plaintiff's state-law claims are against an interstate carrier, they are preempted by the Carmack Amendment.

## II. Count V: Carmack Amendment

Plaintiffs also seek relief under the Carmack Amendment. J.J. argues, first, that because plaintiffs are "brokers" under the Carmack Amendment, they cannot state a claim for relief. The Carmack Amendment provides relief only to interstate carriers, not transportation brokers. *Id.* at 148–49. A "broker" is a principal or agent who "sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).

Discovery may reveal that plaintiffs are brokers. But taking plaintiffs' allegations as true—as the Court must in deciding a motion under Rule 12(c)—the Court can reasonably infer that plaintiffs are not brokers under the Carmack Amendment. Plaintiffs allege that they are in the business of transporting, rigging, installing, and rebuilding heavy machinery. *See, e.g.*, First Am. Compl. ¶ 3, 5, 11–12. Plaintiffs nowhere allege that they are brokers. Indeed, by their own description, they are more like motor carriers than brokers. *See* 49 U.S.C. § 13102(14) (defining a motor carrier as a "person providing motor vehicle transportation for compensation").

J.J. argues, second, that plaintiffs do not state a claim for relief because they fail to allege actual damages. To state a claim under the Carmack Amendment, a plaintiff must establish, among other things, that the defendant's actions caused its damages. *Delta Research*

3

*Corp. v. EMS, Inc.*, No. 04-600046, 2005 WL 2090890, at *2 (E.D. Mich. Aug. 29, 2005). Under the Carmack Amendment, a carrier is liable to any person who is named on the pertinent bill of lading and for any injury to property that occurred during transportation. 49 U.S.C. § 14706(a)(1). A carrier is liable "for all losses resulting from any failure to discharge a carrier's duty." *Am. Synthetic Rubber Corp. v. Louisville & N. R.R. Co.*, 422 F.2d 462, 466 (6th Cir. 1970) (quotation marks omitted). This includes damages "for delay in delivery." *Id.*

Plaintiffs allege facts sufficient for the Court to reasonably infer that defendant is liable for actual damages. As plaintiffs were customers on J.J.'s subcontract, they were entitled to recover under the bill of lading and, thus, also entitled to seek damages. The Court must interpret "actual damages" broadly to encompass "all damages." *Am. Synthetic*, 422 F.2d at 466. Plaintiffs allege that their total damages are $250,000—twice the price of the press crown. This additional damage, plaintiffs say, arose partly from plaintiffs having to wait for the replacement press crown before reassembling the press—i.e., damages from a delay in delivery.

In sum, at this stage of the proceedings, the Court cannot grant defendant's judgment on the pleadings either on the grounds that plaintiffs are brokers or that they did not suffer actual damages. Accordingly,

IT IS ORDERED that defendant's motion for judgment on the pleadings is granted in part and denied in part as follows: the motion is granted as to Counts I–IV, but denied as to Count V.

Dated: December 7, 2017  s/Bernard A. Friedman
      Detroit, Michigan  BERNARD A. FRIEDMAN
        SENIOR UNITED STATES DISTRICT JUDGE

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 7, 2017.

s/Johnetta M. Curry-Williams  
Case Manager
